This will be called, as previously announced, the times will be as allotted to counsel. The first case today is number 181484, United States v. Brian Price. Thank you. Good morning. Good morning, Your Honor. May it please the Court. I'm George Gorman for Mr. Price. In this case, Your Honor, the July 2016 indictment of Mr. Price and eight other individuals for conspiring to violate the drug laws in violation of 21 United States Code 846 was found by the trial judge to, in fact, be several different type of conspiracies of the same sort. Which contained, which were linked together, if you will, by one common individual, that is, Luis Rivera. He was, to refer to this as a hub and spoke conspiracy, Mr. Rivera was the hub. One of the spokes, if you will, was the conspiracy between Mr. Price and Mr. Rivera. This conspiracy, as did several others in the case, contained an additional element in that it, in addition to cocaine powder, it also involved 28 grams or more of crack cocaine, which was either distributed or foreseeable to Mr. Price. As I understand it, this portion of the indictment was required by the case of Alain versus the United States. In January of 2018, Mr. Price changed his plea to the conspiracy at a Rule 11 hearing and pled guilty to so much of the conspiracy as alleged that he distributed powder cocaine. He denied any connection or involvement with cocaine base. Counsel, at that hearing, the court specifically indicated what it was going to do. It said it was going to do beyond a reasonable doubt for the substantive offense and it said it was going to do preponderance as far as its sentencing determination. Defense counsel specifically stated, I understand what the court is saying, more specifically, and I'm in agreement with it. So how do we get around that? Well, I did understand what the court was saying and what I did understand was that the judge was indicating that as to the crack cocaine portion of the conspiracy, she was going to conduct a jury weight trial to determine whether or not that portion of the allegation had been found. And I believe I said that what was in dispute was not only the weight but the type of substance, i.e., was it crack or was it powder? Let me just quote the district court. The district court said, and then if I find that it was not proven beyond a reasonable doubt, I have to ratchet back and decide whether it was proven by preponderance for the guidelines. So the court put everybody on notice what it was going to do and how it was going to proceed to make these decisions. And you agreed at that time? Well, yes, but I didn't agree that, I suppose to put it to the answer to the court's question, I didn't agree that there was 27 grams of crack in the air and that we were contesting whether or not there were 28, 29, etc., etc. Isn't that your only real issue on appeal? I mean, you have others, but isn't your key issue as to whether there was sufficient evidence to justify a finding by a preponderance for sentencing purposes that there were more than 28 grams of crack? Well, because if the judge, if that finding stands, if we find there was sufficient evidence in the record to support that finding of fact by the sentencing judge for sentencing purposes, then under our current precedent, wasn't the procedure, wasn't the judge perfectly entitled to take that into consideration for sentencing in determining the guideline sentencing right? No, Judge, because not after she acquitted him of the possession of the, of crack. Now you've got an argument that if you're acquitted by the reasonable doubt standard of an act of any type, that that act can then not form the basis for a guideline sentencing range calculation. That's a separate legal issue, but we have case law directly on that point, don't we? Well, the case law doesn't, that I was able to locate, doesn't involve an acquittal of an element of the offense charged, which here the element that I'm referring to is that this conspiracy involved crack cocaine. So the acquittal of the, the acquittal of the element, I would suggest, informs and shapes what the, what the crime was that the judge going ahead and finding... The acquittal informs the standard that the judge had to use, which is beyond a reasonable doubt. But, but what's wrong with the, with the court even after that, under our case law, saying that by a preponderance, even though it wasn't beyond a reasonable doubt, that the evidence preponderates in favor of a finding that there was crack? Because the, because the, the sentence has to be based on the count of conviction. The count of conviction was an agreement to distribute, between these two men, to distribute a controlled substance, which did not involve crack. It involved only powder, cocaine, by virtue of the judge's finding. And so... But the guidelines allow for relevant conduct. Well, but the judge went ahead and, Judge Sarris went ahead and proceeded to sentence only on the relevant conduct. And the offense of conviction was a conviction for a conspiracy as to what Mr. Price had pledged to, which was a conspiracy to distribute cocaine powder. Well, why do you keep saying pledged? Wasn't he tried and found not guilty on the crack cocaine? He was found not guilty of the crack, Judge. Yes. Yes. That's all I wanted to know. And he had pledged to the powder. And your, I think I understand your argument on this point is that because he was acquitted on the crack charge, that therefore the crack could not be taken into consideration in setting the guideline sentencing range. The way the, that's correct. In this case, the way the indictment was drawn. And then how do you get around the United States versus Watts? The Supreme Court saying that acquitted conduct can provide a basis for a preponderance finding. It does not preclude a finding by a preponderance of that fact for sentencing purposes. I don't, I don't get around, hopefully I'm not trying to get around it, Judge. I think that Watts doesn't address this particular situation where there is an acquittal of an element of the offense. That Watts, if I, if I... Watts says a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge so long as that conduct has been proven by a preponderance of the evidence. So how, that, it seems to me you're saying that Judge Sarris' finding of acquittal on the crack charge somehow precludes her from considering the crack under the preponderance standard for sentencing. That, that excerpt from Watts, which you just read, Judge, that, I think Watts involved a multi, a multi-count case. And the acquittal, the acquittal to me sort of turns the, that particular fact into a bad act, turns the element into a bad act in a multi, in a multi-count case. And, and therefore in that situation I don't have a quarrel with the guidelines or with the sentence, with a sentencing judge using as relevant conduct some other fact, something which is essentially a bad act. But here he was acquitted of an element of the offense that, that, and I suggest that that, I suggest that that changes and precludes the sentencing judge from doing what she did. Thank you. Mr. Crowley, good morning. Good morning, Your Honor. Michael Crowley on behalf of the United States. As an initial point, we believe waiver does apply in this case. As noted by the bench, the district courts directly set forth the standard it would use in this case. Let me ask you something. Could the government cry the defendant in this case for a crack cocaine violation? Could the government have tried? No, could they now try the defendant? No, Your Honor. Why? Well, it would be a Sixth Amendment violation. He was charged with a multi-drug conspiracy. It's double jeopardy, isn't it? Correct. Well, if you can't try him, how can you use that evidence to do what you would do at the end of a trial in which he was found guilty? Well, as noted by Judge Kayada, the Supreme Court in Watts said that if a person is convicted, acquitted conduct can be used to set the guideline range. So in this case, the defendant pled to conspiracy to distribute a controlled substance. The controlled substance is charged with cocaine and cocaine-based. The government actually, as the court recognized and as the defendant admitted in his brief, this was a two-drug. He conceded, well, excuse me, the drug, the court at the time of sentencing used both cocaine and cocaine-based to dictate the guidelines. So this falls under Watts, and it's similar to the Cava case. Was the issue of double jeopardy discussed in Watts? I don't believe it was. Okay. But I believe it's binding on this court, and we think Cava is a direct relevant case. And in that case, the defendant was actually found acquitted of crack cocaine, and then the district court used the crack cocaine to set the guidelines over the defendant's objection, which was upheld by this court. So the Supreme Court precedent set by Watts and repeatedly supported by this court basically allowed the court to look at the relevant conduct, which was the crack cocaine, to set the guidelines within the statutory mask. And this is a case the defendant doesn't argue that it exceeded the statutory mask. So that is how the drug weight was used in this case. We believe it aligns completely with precedent, and that's Judge Saris applied precedent properly and did so from the beginning, said she would. The second argument raised by the defendant is that there was an improper use of hearsay. In this case, number one, we believe similar to the first argument, which involved the Watts issue, the defendant weighed that argument. At the beginning of the case, excuse me, leading into the sentencing, the defendant actually submitted the very evidence that he claims is hearsay. So that would act as a waiver under Verdugo. Secondly, we would note that it wasn't hearsay. In this case, the relevant evidence that the defendant focuses on are communications between him and Mr. Rivera. Those would come in as non-hearsay, both as an admission by a party opponent and as a co-conspirator statement. The defendant actually agreed, heading into sentencing based on his pleadings, that it was in fact a co-conspirator statement. And finally, as this court has noted repeatedly and has set forth in our brief, the government can use hearsay in sentencing. In this case, the significant issue is whether it's reliable. In this case, the defendant admitted that there were communications between himself and Mr. Rivera concerning the drug distribution. So the reliability is... The significant issue is what does with it mean? Correct. Correct. So in this case, with it... And I might be not remembering correctly, but the agent at first testified that they had never heard the term before. And then it was only upon reviewing that they put context to whatever with it means. The evidence as to with it, I believe, is threefold in this case. First, there was a recording put in where Mr. Rivera met with a co-operator working for the government. And they discussed, this was noted by agent, by the ATF agent, they discussed the term with it while they're discussing cooking it. And actually, the court actually heard during that communication Mr. Rivera used the term cooking in conjunction with whipping. So first, there was a recorded matter which the government got in, not as a co-conspirator statement, but to go to what the term whip it meant. In which Mr. Rivera, the defendant's co-conspirator, actually used the term. Then, and with that same witness, which was the ATF agent, the court, sua sponte, asked the agent whether he had ever heard the term whip it in his experience as a law enforcement officer in that general area. And he stated he had in investigations. And that it meant cooking cocaine into cocaine base. The one issue that came up in the appellee's brief that is somewhat confusing is the appellee states, well, the defendant never heard it during the investigation. And that's not the defendant, the ATF agent. And the ATF agent never testified to that. Actually, the ATF agent testified that he didn't listen to wire intercepts during that investigation. So his experience, and what the court requested, came from his own prior investigations of drug trafficking in the general Brockton area. So there was first the recording with the co-operator. Secondly, the sua sponte questioning by the court of the ATF agent. And third, the government put on a DEA task force officer, a sergeant with over 20 years experience, who testified he understood the term whip it to mean to cook cocaine base. So the court, this is the third point raised properly by the court. The third point is the seminal recording in the government's view on dictating whether it was a cocaine base transaction is the one in which Louis Rivera states that he had trouble, quote, whipping it. And that he had spoken to the defendant previously. And the defendant had told him that he did not have that problem. And Rivera stated that he had better cocaine this time. So that's the March 17th recording, which during, there are notations in the appellee's brief that it was difficult to hear that recording. Actually, the record is that it was difficult to hear the co-operator's meeting. The recording on that is clear on the actual recording between Rivera and Mr. Price. And moreover, the defendant submitted his own transcript heading into sentencing in which he agreed with the government's interpretation. So basically, the court looked at the term whip it. And the government argued that also just within the recording itself, the term lends itself to the cooking of cocaine base because they're talking about cocaine. And Rivera states that I had a problem whipping it.  And so with the three prior, the testimony leading up to it of the agents, the two agents, and the actual recording in which Rivera himself uses the term whip in conjunction with cooking cocaine, the court had a rational basis to interpret that March 17th recording as Rivera stating that I had trouble with my prior, I guess you'd say, shipment of cocaine that couldn't be cooked properly. And that Mr. Price said I didn't have the same problem. And the government would note that it actually took a conservative approach at sentencing in this case because the only two that the court remembers that the defendant actually stipulated that there were two, that he had distributed 62 grams or received 62 grams of cocaine in February of 2016 and 62 grams in March. The government only went for the 62 grams of cocaine in March as being cooked because those are the ones expressly referenced, one as the prior shipment that they had that had problems cooking it. And then Rivera states, I'll provide you with another 31 grams. And they agreed to a deal in that March 17th recording to get more cocaine to cook in the cocaine base. And then that is subsequently confirmed in a March 18th. So the government took a conservative approach that it only sought those two specifically identified in the recording deliveries of cocaine, powder cocaine from Louis Rivera to Mr. Price, that those are the ones that Mr. Price admitted that he had cooked in the cocaine base based upon that recording. And given that the court made an interpretation, that interpretation, because it's interpreting the facts before it, cannot be found to be clearly erroneous under the court's precedent. What about, didn't the court seem to misunderstand the meaning of the word grease? It seemed that the court equated grease with cocaine, with crack, and yet the testimony was just the opposite. I think the court made a notation or a statement where it noted that she viewed that as being tied to crack. The government did not take that position. As we argued, as came in with the evidence, what grease was in this opposition was that it was high quality cocaine that could be cooked easily into crack. So if the government took the position that grease did not mean crack, but the court, and this evidence was a little confusing, the court thought that grease meant crack, then don't we have a problem? I don't believe so. And the reason is the court, when it looked at its interpretation of whip, actually said that it found, it easily found whip to be supported. And as we noted previously, there are multiple examples supporting that. So the court, in looking at the term whip, because that is what dictates the cocaine base, the court found that it easily, and I believe it at two points, found that it easily found that whip, especially given the connotation that was used, was consistent with cocaine base. Thank you. Thank you.